HEATH vs. THE SILVERTHORN LEAD MINING & SMELTING COMPANY and others.

PRIVATE CORPORATION. *(1) Estopped to deny validity of contract made for it by its de facto officers.*
BILLS AND NOTES. *(2) Who protected as purchaser for value.*
PLEDGE. *(3) Pledge of stock as collateral, not bound to take it in payment. (4) Act of pledgee in voting on such stock, held not a conversion.*

Heath vs. The Silverthorn Lead Mining & Smelting Company and others.

Judgment in Foreclosure. *(5) Error to adjudge void a mortgage subsequent to plaintiff's, whose validity is not contested by the mortgagor.*
Rules of S. C. *(6) What printed case and briefs must contain.*

1. Ch. 258, P. & L. Laws of 1866, in terms constitutes the persons therein named a corporation; and, although the first meeting of the stockholders for the election of officers, etc., and all subsequent meetings, were held outside of this state, their acts constitute an acceptance of the charter; and the company is estopped from denying the validity of contracts entered into by its officers *de facto* on the ground that it could not legally elect such officers and transact business except within the limits of this state.

2. One who takes commercial paper, without notice, in absolute payment of a preëxisting debt, is protected as a purchaser for value; and this, although he purchases for less than the face of the paper, unless the discount is so great as to show *mala fides*.

3. The fact that plaintiff, on purchasing defendant's note and mortgage in suit, took capital stock in the defendant in pledge as collateral security, does not bind him to accept such stock in payment of the note, in the absence of any agreement to that effect.

4. The fact that plaintiff, while holding such stock in pledge, voted upon it at a stockholders' meeting, did not constitute a conversion of the stock by him; especially as it appears that he was requested by the president of the company (who knew that he held the stock as collateral security) to be present at such meeting and vote upon said stock.

5. One H., made defendant with the corporation, alleges that a mortgage of the same premises, executed to him by the officers of the company, was prior to that of plaintiff, and exhausted the power of said officers in that behalf; and asks that the plaintiff's mortgage be adjudged void, and his own the sole valid lien on the premises. The corporation does not contest the validity of the H. mortgage, nor ask any relief against it. Plaintiff's mortgage having been adjudged prior and paramount to that of H., and a judgment of foreclosure and sale having been rendered in his favor, it was error to further adjudge the H. mortgage void for all purposes; and for such error the judgment is reversed, and the cause remanded with directions to enter a proper judgment.

6. The rules requiring the brief on each side to contain a succinct statement of so much of the record as is essential to an understanding of the questions discussed, and the printed case to present an *abstract* of the material matters, will be enforced by a peremptory dismissal of the appeal or writ of error where there is a marked failure to comply with them.

APPEAL from the Circuit Court for *La Fayette* County.

Heath vs. The Silverthorn Lead Mining & Smelting Company and others.

Action commenced in 1871, for a foreclosure of a mortgage alleged to have been executed by the *Silverthorn Lead Mining & Smelting Company* in July, 1867, to secure its promissory note to one Law for $15,000, payable in three years with interest. These instruments are averred to have been transferred and assigned by Law to the plaintiff before due, for value. It is alleged that one Ward, then being the secretary of said company, borrowed said sum of $15,000 of Law, executed and delivered said note therefor, and also executed and delivered said mortgage under the seal of the corporation; and that he did these acts in pursuance of authority vested in him by a resolution of the board of directors of said company passed at a regular meeting of the board on or about the 16th of July, 1867. It is further alleged that said company was then a corporation existing by virtue of the laws of this state. The other defendants are made such as having or claiming some interest in or lien upon the mortgaged premises; which interest or lien, if any, is alleged to have accrued subsequently and to be subject to the lien of said mortgage.

There were four separate answers; one by the defendant corporation, one by the defendant *Howard*, the third by the defendants *Tallman* and *Knowlton*, and the fourth by the defendant *Charles*. The nature of the defenses relied upon will sufficiently appear from the opinion. Judgment was rendered in favor of the plaintiff; and the defendants appealed.

*M. M. Cothren*, for appellants:

1. The company was never organized, and the mortgage is void. "All votes and proceedings of persons professing to act in the capacity of corporators, when assembled beyond the bounds of the state granting the charter of the corporation, are wholly void." *Miller v. Ewer*, 27 Me., 509; 2 Kent's Com., 224; *Williams v. Storrs*, 6 Johns. Ch., 357; *Bank of Agusta v. Earle*, 13 Pet., 519; *Farnum v. Blackstone Canal Co.*, 1 Sum., 47; *Freeman v. Machias Waterpower & Mill Co.*, 38 Me., 343. 2. The evidence shows that the plaintiff

was not an innocent purchaser. To entitle himself to protection as such, he should have delivered up all evidences of past indebtedness, and left the mortgage and note in suit as his sole evidence of such indebtedness. Receiving a note for a precedent debt is receiving it for value, within the law merchant, if it be taken in satisfaction of such debt, and the *debt be cancelled*. *Bank of St. Albans v. Gilliland*, 23 Wend., 311. Merely taking a note for a precedent debt is not taking it for value within mercantile usage. *Rogers v. Morton*, 12 Wend., 487; 14 id., 575. Moreover, as a shareholder, plaintiff was legally bound to take notice of everything connected with the affairs of the company. *Miller v. Ewer, supra*. Counsel further argued, upon the evidence, that the plaintiff knew Law to be engaged in defrauding the company, and especially that his holding a large amount of stock which he knew belonged to the company, having it transferred to him on the books, and voting on it, were strong evidence of his complicity with Law. 3. This note and mortgage are void, because the company's agents, before making them, exhausted their authority, by executing the *Howard* note and mortgage.

The cause was submitted for the respondent on the brief of *Frederick Sackett:*

1. If there has been a user of the corporate franchise by an association of persons, their existence as a corporation can be inquired into only by the government. A. & A. on Corp., § 94; *Rice v. R. R. Co.*, 21 Ill., 93; *Tarbell v. Page*, 24 id., 46; *Ill. G. T. R. R. Co. v. Cook*, 29 id., 237; *Baker v. Backus*, 32 id., 79–110; *Smith v. Sheeley*, 12 Wall., 358. An inquiry as to the right of the company to act as a corporation can only be had at the suit of the state on information of the attorney general. *Rondell v. Fay*, 32 Cal., 354; *Baker v. Backus, supra*. Persons in possession and exercise of the corporate rights granted by the charter must be considered rightfully there, even if it was shown that the charter was granted on a precedent condition; for, as against all but the

sovereign, the precedent condition shall be taken to be performed. *The Tar River Nav. Co. v. Neal*, 3 Hawks, 520, 534; Abbott's Dig. Corp., 365; A. & A. on Corp., § 739; Herman on Estoppel, §§ 539, 542.  2. Corporations that have permitted particular individuals to take possession of their property, their seal and their records, and to act as their trustees, and have in fact held them out to the world as their trustees, are estopped from questioning the acts of their agents.  *Lovett v. Ger. Ref. Church*, 12 Barb., 67; *Zabriskie v. R. R. Co.*, 23 How. (U. S.), 400.  In a suit to foreclose a mortgage given by a corporation, the question of the existence of the corporation cannot be raised.  Having mortgaged the property, it will not be permitted to deny its own title.  *R. & M. R. R. Co. v. Farmers' L. & T. Co.*, 49 Ill., 331.  After receiving the money, and giving a mortgage to secure its repayment, the company cannot avoid liability by questioning the authority of the persons making the loan.  *Ottawa P. R. Co. v. Murray*, 15 Ill., 336; *Chicago, etc., R. R. Co. v. Howard*, 7 Wall., 392, 413; *Mobile & C. P. R. R. Co. v. Talman*, 15 Ala., 489.  If one professes to be authorized to mortgage the property of a corporation, in order to procure a loan, and the money obtained thereby comes to the use of the corporation, and be retained by it, that will be evidence of a ratification of the mortgage.  *Despatch Line v. Bellamy Man. Co.*, 12 N. H., 205; *Whitwell v. Warner*, 20 Vt., 425, 449.  Nor can a corporation, receiving the benefit of a loan, avoid its liability upon a mortgage given to secure its payment, by denying the authority of those who contracted in its behalf.  *Ottawa P. R. Co. v. Murray, supra;* Herman on Estoppel, § 542; Bigelow on Estoppel, 466.  3. The directors are the agents of the corporation, and not the corporation itself.  Although they meet without the limits of the state creating the corporation, their proceedings will be valid and binding on the company.  The directors of a manufacturing company, incorporated without restriction as to the place of holding their meeting, may meet

Heath vs. The Silverthorn Lead Mining & Smelting Company and others.

in another state and there appoint a secretary. *McCall v: Byram Man. Co.*, 6 Conn., 428, 430, 432. In authorizing an agent to execute a deed, the directors act as agents of the corporation; and they may confer such authority by a vote passed at a meeting without the state where the corporation was created. *Arms v. Conant*, 36 Vt., 744. When the corporators meet without the limits of the state granting the charter, and elect a board of directors, which calls for payment upon subscriptions to the company's stock, a subscriber, sued for such call, cannot object to the legality of the election. The parties thus elected are directors *de facto*, and the legality of the election cannot be inquired into collaterally, without showing a judgment of ouster against them in a direct proceeding for that purpose by the government creating the corporation. *O. & M. R. R. Co. v. McPherson*, 35 Mo., 13. 4. The interest of the stockholders, as such, may be legally affected by the action of the company through its officers; but, as between the stockholders and the company itself, touching any claim which they have against it, they stand in the position of a stranger. *King v. R. R. Co.*, 5 Dutch., 82, 91. The members or directors of the corporation may make contracts with it like other persons; and as to such contracts, when made, they stand in the relation of strangers to the corporation. *Stratton v. Allen*, 16 N. J. Eq., 229; *Gordon v. Preston*, 1 Watts, 385; *Revere v. Boston Cop. Co.*, 15 Pick., 351. See also *Am. Bank v. Baker*, 4 Met., 164, 176; *Hill v. Manchester W. W. Co.*, 5 Barn & Ad., 866; 1 Phillipps' Ev., C. H. & E.'s Notes, 368 (449). 5. Where a negotiable note secured by mortgage is passed before maturity, the mortgage passes as incident to it; and they may be enforced by the holder for the full amount in spite of any existing equities between the mortgagor and mortgagee. *Fisher v. Otis*, 3 Chand., 83; *Croft v. Bunster*, 9 Wis., 503; *Cornell v. Hichens*, 11 id., 353; *Crosby v. Roub*, 16 id., 616; *Andrews v. Hart*, 17 id., 297.

COLE, J. The counsel for the defendant company insist that the note and mortgage in suit are invalid for the reason that the corporation had no legal existence and no authorized officers or agents to act for and bind it in such contracts when these instruments were executed. No meeting of the incorporators was held in this state for the purpose of choosing directors and organizing the company until after these instruments were executed, and on that ground it is claimed they are null and void. The records of the company show that the first regular meeting of the board of directors created by the charter was held at Shullsburg, Wisconsin, at which a majority of the incorporators were present, and an organization of the company effected, and that then the meeting was adjourned to meet in Chicago. But it satisfactorily appears from the evidence that no such meeting was in fact held, and that the first meeting of the stockholders for the election of officers and the organization of the company was actually held at Chicago, October 2, 1866, and that all subsequent meetings for the transaction of business were held in that city. And the counsel for the company, to show that the note and mortgage are void, refer to and rely upon the well settled rule of law that a private corporation whose charter has been granted by one state cannot regularly hold meetings, pass votes and exercise powers in another state. The case of *Miller v. Ewer*, 27 Maine, 509, is cited in support of the position that " all votes and proceedings of persons professing to act in the capacity of corporators, when assembled beyond the bounds of the state granting the charter of the corporation, are wholly void." It is true this case so holds; but at the same time it recognizes a rule of law which is sanctioned by numerous authorities, and which is certainly in accord with the principles of natural justice, that when a corporation has " held certain persons out to the public as its directors or officers, those dealing with them as such, and ignorant of their want of legal power, will be entitled to consider their acts as binding upon

the corporation; and when there has been an informal or irregular exercise of an existing power of election, the officers so elected, until removed, are regarded as officers *de facto*, and their acts are obligatory upon the corporation." p. 524. In determining the question as to the validity of the note and mortgage, it is apparent that the distinction between what is sufficient to constitute a corporation *de facto*, and what is necessary to constitute one *de jure*, must be regarded, and the circumstances under which a *de facto* corporation will be estopped from denying its existence as against a stranger dealing with it. It may well be that the election of a board of directors at the first meeting held outside the limits of the state was irregular and not warranted by the charter, and yet the corporation may not be in a position to take advantage of the irregularity in this action upon these contracts.

The act of incorporation (ch. 258, P. & L. Laws of 1866) provides that Richard S. Law and four other persons named, their associates, successors and assigns, should be, and they were by the act, constituted a body corporate and politic by the name of the " Silverthorn Lead Mining and Smelting Company "; and by that name were authorized to sue and be sued; to have a common seal; to enjoy the rights and privileges incident to corporations for mining, smelting and manufacturing lead ore and other metals in this state; with power to purchase, hold, lease and convey real estate not exceeding in value $1,000,000, and personal property to the amount of $200,000. The capital stock of the company was fixed at $3,000,000, and was to be divided into shares of such amount as the board of directors might determine, transferable as should be prescribed by the by-laws; the affairs, business and property of the corporation to be managed by a board of directors of not less than five, to be elected at the annual meeting of the stockholders, the board to choose one of their number president, and they could appoint a secretary, treasurer and other officers as they might deem expedient; had power to adopt by-laws for the govern-

ment of the company, and by a resolution were authorized to locate the principal office or place of business of the company. Until the first annual meeting of the stockholders called for the purpose of electing directors, and until such directors were elected, the corporators named were constituted directors, and might exercise all the powers conferred upon the board of directors. Then further powers were conferred upon the corporation, not necessary to be alluded to. It will be observed, however, that the act names the corporators and declares them incorporated, without any preliminary steps whatever, and constitutes the corporators the board of directors of the company. In other words, the charter *ipso facto* brings *in esse* a corporation so far as was possible for the legislature to create a private corporation. In October, 1866, the stockholders met in Chicago, and elected a board of directors, and organized the corporation. At subsequent meetings held in that city, the board adopted a code of by-laws for the government of the company, and procured a corporate seal; sold large amounts of the capital stock; acquired real estate for mining purposes; caused mining leases of portions of the same to be executed; and prosecuted extensive mining operations. In July, 1867, by a resolution adopted by the board of directors, the president and secretary, or either of them, were authorized to borrow $15,000 in the name of and for the use of the company, at a rate of interest not exceeding ten per cent. for three years; and to secure the payment of the loan, either of said officers was empowered to execute under the corporate seal, acknowledge and deliver in the name of the corporation, a mortgage upon its real estate, and at the same time to execute and deliver a promissory note with the mortgage, and as a collateral security to pledge certificates representing 7,000 shares of the stock of the company. A note and mortgage were executed in pursuance of this resolution, and delivered, as is claimed by the plaintiff, to Richard S. Law, the mortgagee therein named, to secure the payment of a loan of $15,000. There is no dis-

pute about these various acts showing an acceptance and user of the rights and franchises granted by the charter, and the question is, Can the corporation repudiate its contracts on the ground that its officers who executed them on its behalf were chosen at a meeting held beyond the limits of this state? If this were a case of first impression, we should say upon principle the company was estopped from availing itself of any such defense to defeat a recovery on its contracts; but the cases cited in the brief of counsel for the plaintiff show that such a view is amply sustained by authority. These cases will not be particularly referred to in this opinion, but they will be found fully to sustain the proposition that where a company has assumed to exercise the franchises conferred by its charter as this has done, it becomes a corporate body *de facto*, and the acts of its officers are binding upon the corporation. The company ought not to be permitted to say, in defense of an action upon its contracts entered into under such circumstances, that it had no legal existence when the contracts were executed, or that its officers were not duly elected or appointed. We have commented upon the fact that the charter created a private corporation so far as it was possible for the legislature to bring one *in esse*, and constituted the corporators a board of directors without further action. Our conclusion upon this point, therefore, is, that though the first meeting of the stockholders to elect directors was held in Chicago, this fact does not render the note and mortgage void as against the corporation.

Again, it is said the plaintiff is not an innocent purchaser of the note and mortgage for value, and consequently is chargeable with all equities existing between the mortgagee, Richard S. Law, and the corporation. The plaintiff derived title to these securities from Law, who acted as superintendent and general managing agent of the business and affairs of the corporation. The note and mortgage were executed and delivered to Law for the purpose, as expressed upon the face of

the instruments, of securing to him the payment of $15,000 which he had loaned the company. It is said that Law really made no loan to the company and gave no consideration for the securities, and furthermore that he had been guilty of a fraud in his dealings with the company in that he falsely represented that he had paid Dr. Lee $25,000 for a tract of land purchased of him, and had a credit for that amount in his account rendered, when in fact he had paid only $10,000. It is not deemed necessary to examine the testimony in detail for the purpose of seeing whether it warrants any such conclusions from the facts proven. It is sufficient to say, whatever may be the exact state of the account between Law and the company, and whatever may be the truth in regard to the alleged fraud, that the note and mortgage purport to have been given for a loan of $15,000 made when they were executed; and there is not a fact or circumstance shown which would charge the plaintiff with either actual or constructive notice of any existing equities between the original parties, or of any infirmity in Law's title. It is the settled rule of this court, that a negotiable promissory note, secured by a mortgage, stands upon the same footing as other negotiable paper, and that an innocent purchaser thereof before maturity is to be protected. *Croft v. Bunster*, 9 Wis., 503; *Cornell v. Hichens*, 11 id., 353; *Crosby v. Roub*, 16 id., 616; *Andrews v. Hart*, 17 id., 297; *Bange v Flint*, 25 id., 544. So that the case, so far as the question of consideration is concerned, comes within the familar principle that a sufficient consideration of the note and mortgage as between Law and the company must be conclusively presumed. It is said that when Law was first introduced to the plaintiff sometime in 1867, it was not as a money lender, but as a borrower, and that this circumstance was sufficient to create suspicion or to put the plaintiff upon inquiry in regard to Law's title. But we can attach no such significance to that fact. The fact that a person wishes to borrow

money does not tend to prove that he might not have had money to loan but a short time previously.

But it is further objected that the plaintiff is not a purchaser for value. It appears that the note and mortgage were first placed in the plaintiff's hands as collateral security for the payment of notes given by Law for moneys loaned him by the plaintiff, and also to indemnify the plaintiff against loss on paper he had indorsed for Law. In the spring of 1868, the plaintiff became the absolute purchaser of the note and mortgage by paying an additional sum of $1,500, and by discharging Law's indebtedness, amounting to over $7,000, and delivering up Law's notes and securities which he held for their payment. The amount of such securities is not disclosed in the testimony. But still the facts show that the plaintiff is a purchaser for value within the rule. When the holder takes paper without notice, in absolute payment of a preëxisting debt, and surrenders a prior note or other security held for such debt, that is a good purchase for value and entitles him to protection. *Stevens v. Campbell*, 13 Wis., 376. And it is the same although purchased for less than the face of the paper (*Bange v. Flint, supra*), unless the discount is so great as to be of itself evidence of *mala fides*. *De Witt v. Perkins*, 22 Wis., 473. Nothing of the kind can be said in this case. The discount, though considerable, is probably not greater than is sometimes made on securities of that class in the market or in the usual course of business. There was also pledged as collateral security for the payment of the note and mortgage, 7,000 shares of the capital stock of the company. It is claimed that the plaintiff is bound to accept this stock at the rate of three cents on the dollar of its par value in payment of the amount due him. It is not shown that there was any agreement or understanding to that effect between the parties, and in the absence of such an agreement we know of no principle of law which compels him to purchase the stock. The

stock doubtless belongs to the corporation after the mortgage debt is paid. It is also suggested that the plaintiff has converted the stock to his own use, because he voted upon it at some of the meetings for the election of directors. We do not think that act was attended with any such consequences. It is clear that the plaintiff had the right to retain possession of the stock. The president of the company testifies that he knew that the plaintiff held stock as collateral security for the payment of the mortgage debt; and he practically admits that he requested the plaintiff to be present at the stockholders' meeting in November, 1870, and vote upon his stock. But even if the act were unexplained, yet we are unable to perceive any ground for saying that voting upon the stock under the circumstances amounted to a conversion of it.

Moreover it is insisted that the note and mortgage are void because the officers of the corporation had exhausted their power by executing to the defendant Howard the precise note and mortgage contemplated in the resolution authorizing them to act. The answer to this objection is, that the overwhelming weight of testimony shows that the Howard mortgage is subsequent in date and inferior in equity to the plaintiff's mortgage — even if it has any validity whatever. But we do not enter upon the consideration of the question whether or not the Howard mortgage is a valid lien, because the pleadings do not raise that issue. In his answer Howard asks that the plaintiff's mortgage be adjudged null and void, and that his mortgage be declared the only valid lien upon the premises. The corporation does not contest the validity of the Howard mortgage, nor seek any relief in respect to it. The only question therefore is, whether the lien of the Howard mortgage is prior and paramount to the lien of the plaintiff's mortgage; and upon that question we have indicated the view that it was not. On the pleadings and evidence, the court should have entered the usual judgment of foreclosure of the plaintiff's mortgage, and ordered a sale of the mortgaged premises.

The court, however, not only granted that relief, but also proceeded to adjudge the Howard mortgage null and void for all purposes whatever, thus clearly going beyond the issues in the case. The judgment of the circuit court, for this error, must therefore be reversed: and the cause must be remanded to that court with directions to enter a judgment in conformity to the prayer of the complaint.

We cannot take leave of this case without expressing our great dissatisfaction at the manner in which it has been presented for our consideration. The rules require the briefs on both sides to contain a succinct statement of so much of the record as is essential to an understanding of the questions discussed. Of course, there should not only be a statement of the substance of the pleadings when questions arise upon them, but also of the leading facts established by the evidence where questions of fact are to be determined. In this case there was a great neglect or failure to conform to the rule in that regard. The printed case likewise contains much immaterial matter, and might and should have been greatly abridged and condensed. It is quite impossible for this court to transact the business coming before it without an observance by the bar of the rules, in the preparation of their briefs and cases. It is painful for the members of the court to recur so frequently to this subject as they have been compelled to do. And it might as well be understood that in the future we shall enter upon the examination of no case where the failure to comply with the rules is so marked as in this case, but shall peremptorily dismiss the appeal or writ of error.

*By the Court.* — The judgment of the circuit court is reversed, and the cause is remanded with directions to enter the proper judgment of foreclosure as above indicated.