# CHARLESTON.

KEARNEYSVILLE CREAMERY COMPANY *v.* AMERICAN CREAMERY COMPANY *et als.*

(No. 5694)

Submitted February 8, 1927.   Decided February 22, 1927.

1.   CORPORATIONS—*Stockholders and Officers Participating Without Dissent in Informal Meeting and Executing Agreement As Well As Corporation Are Estopped to Deny Meeting's Legality.*

    Where all the stockholders and officers of a corporation participate without dissent in an informal meeting thereof, and thereafter execute an agreement entered into at such meeting, they, as well as the corporation, are estoppd to deny the legality of the meeting.   (p. 257).

    (Corporations, 14 C. J. § 1373.)

2.   SAME—*Payment of Funds to Stockholders Under Agreement at Informal Meeting Will be Sustained in Absence of Prejudice to Creditor or Third Party.*

    Corporate funds paid to the stockholders by virtue of an agreement made at an informal meeting between all of the stockholders and directors concurrently, will be sustained, when the rights of no creditor or other third party are prejudiced thereby.   (p. 258).

    (Corporations, 14 C. J. §§ 1127, 1228.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Wood County.

Suit by the Kearneysville Creamery Company against the

American Creamery Company and others. From a decree for plaintiff, defendants appeal.

*Reversed and dismissed.*

*Russell, Hiteshew & Adams,* for appellants.
*Martin & Seibert,* for appellee.

HATCHER, PRESIDENT:

The plaintiff obtained a judgment in the circuit court of Wood county against the defendants, for certain sums which the bill alleged were paid to the defendants for services as directors without the assent of the stockholders. The defendants admit the payments, but deny that they were for directors' salaries, and claim that they were distributions of earnings made under the mutual agreement and approval of all the stockholders of the plaintiff.

The capital stock of the plaintiff is $10,000.00, divided into 100 shares. The first meeting of the stockholders was held on July 17, 1918. The minutes of that meeting show that when it terminated the stock was held as follows: E. S. Haller, 21 shares; Mrs. Haller, 1 share; J. M. White, 1 share; D. K. Barrick, 1 share; and W. M. B. Sine, 76 shares. That meeting was the only one of which there were any minutes kept.

On or about Aug. 1, 1918, the testimony shows that W. M. B. Sine was the owner of 78 shares. As E. S. Haller continued to hold his 21 shares, and Mrs. Haller her 1 share, the logical conclusion is that Sine had at that time secured the shares of White and Barrack, respectively.

On or about Aug. 1, 1918, Sine sold 13 shares of his stock to each of his co-defendants, J. H. Randolph, A. G. Sine, C. T. Hiteshew, G. W. Strong, and J. T. Swager, retaining 13 shares for himself.

There was only one witness, defendant Randolph, who testified as to how the payments came to be made. He was called as a witness by the plaintiff. His evidence is not denied and will be accepted as true. He stated that the stock

purchased by him and his associates from Sine was paid for individually, and that on or about that time an informal meeting of the stockholders was held in Parkersburg, which was attended by the several personal defendants to this suit and E. S. Haller, who comprised all the stockholders and directors of the company at that time, except Mrs. Haller; that her share was understood among the stockholders to belong to Haller; that it was then mutually agreed that $50.00 a month should be paid out of the earnings of the company to each stockholder, except Mrs. Haller; that the vouchers issued for those payments were marked "For Salary"; that the payments were carried on the books of the company under the head of "Salaries"; but that they were in fact distributions of the earnings of the company.

These payments continued until the middle of April, 1919. On April 30, the stock theretofore owned by the several defendants was sold to E. S. Haller and associates, by the defendant American Creamery Company. All of the stock in this latter company was owned by the personal defendants to this suit. When it was organized, or when it secured that stock, does not appear in the record. A letter written to the plaintiff by the secretary of the American Creamery Company in 1923 states that "in the first few months" after the organization of the American Creamery Company it held "the controlling stock" in the Kearneysville Creamery Company.

The plaintiff contends that the meeting at Parkersburg was illegal because (1) it was not called in the manner provided in the by-laws, (2) there was no waiver of notice of the meeting, in writing, signed by all the stockholders, (3) there could be no lawful meeting of the stockholders except at Kearneysville, which was the principal office of the company, (4) no record was kept of the meeting, either as a stockholders' or a directors' meeting, and (5) the meeting was participated in by persons who were not stockholders of record.

It is unnecessary to detail the ingenious argument of counsel for plaintiff, or to differentiate the many authorities cited in support thereof. The argument and the citations might

be applicable in a suit brought against defendants by a creditor or dissenting stockholder, but are not pertinent here. The validity of a corporate act, even one of major importance, does not necessarily depend upon a formal meeting of the corporate body called in a formal way. *Kennedy* v. *Bank,* 67 W. Va. 475; *People* v. *Refining Co.,* 121 N. Y. 582 (619). The statutory and by-law directions as to the call and conduct of such meeting are for the benefit of either the stockholders, the corporation or its officers. Any such requirement may be waived by whomsoever it benefits. 26 A. & E. Ency. Law 994; 7 R. C. L. 337; 14 C. J. par. 1373, p. 893; Cook on Corps. par. 599; *Synnott* v. *Loan Assn.* 117 Fed. 379. Informality is not a badge of illegality. No matter the place, the time and the informality of the meeting, the stockholders who participate therein without dissent, will not thereafter be permitted to deny its regularity. *Germer* v. *Oil Co.,* 60 W. Va. 143; *Allen* v. *Wilson,* 28 Fed. 677; Clark and Marshall Corp., Sec. 647; Thompson Corp., 2nd. Ed. par. 909; Fletcher Cyc. par. 801; Cook, *supra,* par. 39. All the real parties in interest— the "aggregate body of the stockholders"—participated in the Parkersburg meeting. Where all the stockholders of a corporation are estopped, the corporation is likewise estopped. "Estoppels are concurrent as between the stockholders of a corporation and the corporation—in other words, whatever will estop the stockholders will estop the corporation." Thompson, *supra,* 1985. *Breslin* v. *Fries-Breslin Co.* 70 N. J. L. 274 (282); *Pueblo Co.* v. *Lannon,* 68 Colo. 131; *Bass & Harbour Co.* v. *Harbour,* 42 Okla. 335; *Home Ins. Co.* v. *Barber,* 67 Neb. 644; *Goss & Co.* v. *Goss,* 147 N. Y. App. Div. 698; *Heath* v. *Silverthorn Co.,* 39 Wis. 146; Cook, supra, par. 3 p. 22 (8th. Ed.).

Counsel suggest that the American Creamery Company may have owned the 78 shares of stock at the date of the Parkersburg meeting, and if so, it was entitled to notice, etc. This suggestion is not only without supporting evidence, but is subverted by the testimony of Randolph that he and his personal co-defendants were stockholders at that meeting. Besides, the American Creamery Company joins in the an-

swer with its co-defendants, which states that the co-defendants owned the stock until March or April, 1919. The American Creamery Company would be the proper party to protest any dividends declared while it was a stockholder of the plaintiff, which it did not authorize or ratify, and it is not complaining.

The plaintiff brought out the fact that the defendants pooled these payments and applied the money on notes which they jointly owed. The application of this money has no bearing on the present case. The issue here is, was the payment of this money to defendants a lawful corporate act? If so, the defendants could expend it as they saw fit.

In par. 3 of his exhaustive treatise on corporation law, Cook discourses on the growth and modification in the last fifty years of the rigor of corporate rules, and boldly declares that under existing law, ''A private corporation may * * * distribute its assets * * * or for no consideration whatsoever, give away its assets, or may mortgage its property for the personal benefit of a part or all of its stockholders or officers, provided, always, that all the stockholders assent, and provided that corporate creditors are not injured, and provided that no statute forbids such acts.'' Consonant with this expansion of corporate law, we find that the weight of authority sustains dividends paid at the direction of all the stockholders when no creditor or other third party is prejudiced thereby. ''Stockholders of a corporation may informally agree to distribute a certain sum as dividends without going through the form of corporate action, or without the action of the board of directors.'' *Barnes* v. *Spencer Barnes Co.,* 162 Mich. 509; *Groh's Sons* v. *Groh,* 80 N. Y. Supp. 438; *Central Ry. Co.* v. *Trust Co.,* 135 Ga. 472 (492); *Spencer* v. *Lowe,* 198 Fed. 961; Fletcher, *supra,* par. 3673; Cook, *supra,* par. 534 (see digest of cases in note 4, p. 1643); 14 C. J. par. 1227, p. 807; *Thiry* v. *Glass Co.,* 81 W. Va. 39. In the case last cited this court held that where stockholders and directors, by common consent, concurred in the management and control of the corporation, a declaration of dividends by the stockholders which did not affect the rights of creditors was not an invalid corporate

act, and the corporation was bound thereby. As the stockholders attending the Parkersburg meeting were also the directors of the plaintiff corporation, the agreement there, whether to pay dividends or to pay salaries to the directors, was the concurrent act of the stockholders and directors. Consequently, we hold that the payments authorized by that meeting are valid, and that the plaintiff is bound thereby.

The decree of the lower court is reversed and the cause is dismissed.

*Reversed and dismissed.*