633 P.2d 599

**Roberta Ruth ROWLAND, Personal Representative of Verley C. Rowland, Deceased, and Thomas E. Rowland, Plaintiffs-Appellants,**

v.

**Thomas Ben ROWLAND, Robert N. Rowland, Margaret H. Rowland, Sally Celia Rowland, Opal Rowland and Rowland's Inc., Defendants-Respondents.**

No. 13180.

Supreme Court of Idaho.

Sept. 8, 1981.

James B. Green and Ron Kerl of Green, Service, Gasser & Kerl, Pocatello, for plaintiffs-appellants.

W. F. Merrill of Merrill & Merrill, Pocatello, for defendants-respondents.

McFADDEN, Justice.

This appeal involves a suit between shareholders of Rowland's Inc., with the plaintiff's, minority shareholders, seeking dissolution of the corporation, the appointment of a receiver to liquidate the corporation, and a distribution of the net assets of the corporation to the shareholders in proportion to their respective stock interests. The district court ruled that the plaintiffs had failed to establish sufficient facts at trial which would warrant an order of dissolution of Rowland's Inc., and accordingly entered judgment in favor of defendants. On appeal we affirm.

Rowland's Inc. is a close corporation, organized in 1962 by Verley C. Rowland (V. C. Rowland) and Thomas B. Rowland (Ben Rowland), brothers, and Margaret Rowland, their sister. Plaintiffs below were V. C. Rowland and his son Thomas E. Rowland (Tom Rowland). Defendants below were Ben Rowland, his son Robert N. Rowland (Bob Rowland) and Margaret Rowland. Also named as defendants were Sally Celia Rowland (wife of Bob Rowland), Opal Rowland (wife of Ben Rowland), and the corpo-

ration, Rowland's Inc. Plaintiff V. C. Rowland died prior to the trial of the instant action and the personal representative of his estate, Roberta Ruth Rowland, was substituted as a party to the action. At the time of the trial Ben Rowland was seriously ill, and pending this appeal, he likewise has died.

The record discloses the following facts pertinent to this appeal.

Rowland's Inc. is engaged primarily in the dairy business, with its principal place of business located in Power County, Idaho. The initial stock interest in the corporation consisted of 70,000 shares to V. C. Rowland, 70,000 shares to Ben Rowland, and 35,000 shares to Margaret Rowland. Tom Rowland has become owner of a portion of the shares originally owned by V. C. Rowland, and Bob Rowland has become the owner of a portion of the shares originally owned by Ben Rowland and Margaret Rowland. The articles of incorporation provided that there would be nine members on the board of directors.

At the annual meeting of shareholders held on April 5, 1972, a new board of directors was elected, the annual board of directors meeting was set for April 12, 1972, and an amendment to Article VII, § 2 of the corporate by-laws was proposed at the meeting. Originally, Article VII, § 2 of the by-laws read:

"The presence in person of seven (7) directors shall be required to constitute a quorum at any meeting of the Board of Directors; the affirmative vote of three-fourths (¾) or seventy-five percent (75%) of the directors shall be required for the passage of any action or any issue at a meeting of the Board of Directors."

The proposed amendment read:

"The presence in person of five (5) directors shall be required to constitute a quorum of any meeting of the Board of Directors. The acts of the majority of the directors shall be the acts of the directors."

Strenuous objection was made by counsel representing V. C. and Tom Rowland as to

the appropriateness of the proposed amendment in the absence of notice that it would be considered at the annual meeting of the shareholders. But upon vote, the proposed amendment was passed by sixty percent of the allotted shares of stock in the corporation. V. C. and Tom Rowland abstained from voting their shares of stock. The meeting then continued with V. C. and Tom Rowland participating with the other shareholders in the remaining items of business coming before the meeting.

At the board of directors' meeting on April 12, 1972, eight members of the board appeared, the only absent member being Tom Rowland. At the meeting V. C. Rowland and Tom Rowland were displaced as officers of the corporation, with the following officers being elected: Ben Rowland, chairman of the board and president; Bob Rowland, vice-president; Margaret Rowland, treasurer; Tina McGee, treasurer. The minutes of the meeting indicate that the following resolution was accepted by the board: "report of the book value of shares divided into net worth would equal $1.93 or $1.934 per share."

From 1972 through 1973, the management of Rowland's Inc., without approval of the board of directors acting as a body, purchased Eastern Idaho Dairy, entered into borrowing arrangements with First Security Bank of Idaho and Idaho First National Bank, procured loans from Ben Rowland and Margaret Rowland secured by promissory notes, entered into a contract with the union representing the corporation's employees, increased salaries of the officers of the corporation, established a corporate retirement plan, purchased several items of new equipment, and entered into a packaging contract with Meadowgold, Inc. Each and every one of these transactions were the result of management meetings.

Subsequently, V. C. Rowland and Tom Rowland made repeated attempts to force a sale of the corporate assets at a price described by them as the "fair market value," with the net proceeds to be distributed to the shareholders in proportion to their respective stock interests in the corporation. In response, the other shareholders offered to purchase V. C. Rowland's and Tom Rowland's stock interests in the corporation according to the stock's book value. The offers were declined; V. C. Rowland and Tom Rowland choosing instead to seek dissolution of the corporation by court order, appointment of a receiver to liquidate the corporation, and a distribution of the net proceeds to the shareholders proportional to their respective stock interests.

In seeking dissolution of Rowland's Inc., V. C. Rowland and Tom Rowland in their complaint asserted that the defendant shareholders have conspired to exclude them from the management and operation of the corporation, and to that end have harassed and oppressed them in derogation of their rights as shareholders in the corporation. Specifically, the complaint alleged that: (1) the amendment to the corporate by-laws passed at the annual meeting of the shareholders of April 5, 1972, was invalid due to illegal corporate procedure, and therefore the subsequent election of officers made pursuant to the amended by-law at the board of directors' meeting of April 12, 1972, was likewise invalid; (2) numerous transactions were without corporate purpose since they were not authorized by formal action of the board of directors; (3) since 1971 the plaintiffs have neither been advised of nor allowed to participate in management meetings or decisions; (4) the corporation has been operated unprofitably since 1971, resulting in the inability of the corporation to pay any dividends; (5) the book value of the stock of the corporation does not reflect the fair market value of the corporation; and (6) the corporation has attempted to unduly compromise its indebtedness to V. C. Rowland by seeking to renegotiate the terms of a note held by the plaintiff. The defendants denied each and every one of these allegations.

A trial to the court was held in the above matter commencing on February 22, 1978. Following the conclusion of the trial, the district court in its findings of fact and conclusions of law concluded that the busi-

ness of Rowland's Inc. had been conducted legally and properly, although perhaps informally, and there was no proof of a failure of corporate purpose, insolvency, gross or negligent mismanagement resulting in loss to the shareholders, or fraud or illegality which would warrant plaintiffs' demand for dissolution of the corporation. The court also concluded that the plaintiffs' only recourse was to relieve themselves of their stock interest in the corporation in accordance with the applicable provisions of the by-laws of the corporation. Accordingly, judgment was entered in favor of the defendants, and thereafter the instant appeal was timely filed by plaintiffs.

On appeal the following issues are raised:

1. Was the proposal to amend the corporation's by-laws a proper matter to be considered at the annual meeting of the shareholders where notice of the meeting did not state that the matter would be considered; and was the instant amendment approved by the requisite number of shares of stock necessary to amend the corporation's by-laws?

2. Did the corporation act legally in entering into transactions without the formal approval of the board of directors acting as a body?

3. Did the district court err in concluding that there was insufficient evidence in the record to support an order of dissolution?

4. Is the by-law provision that the corporation shall have the option, where no outside market exists, to purchase at book value the stock interest of a shareholder desirous of selling his stock interest enforceable?

Although the appellants presented several other subsidiary issues on appeal, a careful review of those issues indicate that they are without merit. Accordingly, our discussion shall be limited to the above enumerated issues.

## PROPRIETY AND LEGALITY OF AMENDMENT TO ARTICLE VII § 2 OF THE BY-LAWS.

■ Appellants contend that consideration of the proposed amendment to Article VII, § 2 of the by-laws was an improper order of business at the annual meeting of the shareholders held on April 5, 1972. The contention is predicated on the undisputed fact that the notice of the annual meeting of the shareholders failed to indicate that the proposed amendment would be considered at the meeting.

The relevant statutory provision in effect at that time, I.C. § 30–133(4),[1] provided in pertinent part that:

"Written notice of the time, place and purposes of meetings including annual meetings shall be given by the secretary or other person authorized to do so, to all shareholders entitled to vote at such a meeting, at least ten (10) days prior to the day named for the meeting."

In the instant case, appellants and their attorney attended the annual meeting of the shareholders held on April 5, 1972. Appellants' attorney voiced an objection to consideration of the proposed amendment on the basis that it was an improper order of business since the notice of the meeting failed to indicate it would be considered at the meeting. Neither V. C. Rowland nor Tom Rowland cast any votes on the motion to amend the by-laws. The next item of business was taken up in the meeting at the request of V. C. Rowland. The record of the meeting indicates that both appellants continued to discuss with the other shareholders the remaining items of business considered at the meeting. Under these circumstances appellants cannot complain to the propriety of the meeting insofar as it

1. In 1979, the Idaho Business Corporation Act was repealed by the Idaho legislature and replaced with a new act based on the American Bar Association's Model Business Corporation Act. I.C. § 30–1–29 provides a somewhat more complete treatment than the notice requirements of its predecessor, I.C. § 30–133(4). In connection with the instant case, it is noted that whereas I.C. § 30–133(4) required notice of the purposes of all shareholder meetings, the new statutory provision governing notice requires notice of the purposes only in the case of special meetings.

related to consideration of the proposed amendment to the by-laws and at the same time participate therein as to other matters coming before the meeting. *Frankel v. 447 Central Park West Corp.*, 176 Misc.2d 701, 28 N.Y.S.2d 505 (1941) *aff'd*, 263 A.D. 950, 34 N.Y.S.2d 136 (1942); *Shamel v. Lite Product Sales*, 131 Cal.App. 33, 279 P.2d 1020 (1955); *Hill v. Atlantic & C. C. R. Co.*, 143 N.C. 539, 55 S.E. 854 (1906); *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517 (1961); *Kearneysville Creamery Co. v. American Creamery Co.*, 103 W.Va. 259, 137 S.E. 217 (1927); *See generally,* Annot., "Participation in Meeting as Waiver of Compliance with Notice Requirement for Shareholders' Meeting," 64 A.L.R.3d 358 (1975).

■ Appellants also contend that the amendment to Article VII, § 2 of the by-laws is illegal since it was passed by a vote representing only sixty percent of the allotted shares of stock in the corporation. Although it is true that I.C. § 30–132(6), in effect at that time, required that a vote representing two-thirds of the allotted shares of stock in a corporation was necessary to amend any by-laws of an Idaho corporation, attention must also be drawn to section 8 of I.C. § 30–132,[2] which provided:

"In lieu of the two-thirds (⅔) vote required by the provisions of sections 6 and 7 above, the articles of incorporation or by-laws may provide for the exercise of such powers by such vote of the allotted shares or directors, as the case may be, not less, however, than a majority thereof, as may be fixed."

It is this later provision which applies here. Article VI, § 1 of the By-laws of Rowland's Inc. states that:

**2.** I.C. § 30–132 was repealed and replaced by I.C. § 30–1–27 in 1979 pursuant to the legislature's adoption of the Model Business Corporation Act. Under the new statutory scheme, once the by-laws have been adopted, any subsequent alteration, amendment or repeal, or adoption of new by-laws is to be made by the board of directors, unless (1) the shareholders exercise their inherent reserved power to repeal or change any such director action, or (2) the articles of incorporation specifically reserve the powers of alteration, amendment, repeal, or new adoption to the shareholders.

"[T]he presence in person or by proxy of seventy-five (75) per cent of the voting power of all shareholders shall be necessary to constitute a quorum of shareholders. *The acts of the majority of the duly constituted quorum shall constitute the acts of the shareholders.*" (Emphasis added.)

In conjunction with this provision, Article XII of the by-laws provides that the "by-laws may be altered or amended at any annual meeting of the stockholders, or at any special meeting of the stockholders called for that purpose." Construing these two provisions together, we conclude under the provisions of Article VI, § 1, of the by-laws it is clear there was a quorum of the shareholders at the annual meeting. Further, sixty percent of the outstanding shares were voted in favor of the amendment, which constituted more than sufficient votes to comply with Article VI, § 1 of the by-laws.

## LEGALITY OF CORPORATE TRANSACTIONS ENTERED INTO WITHOUT FORMAL APPROVAL OF BOARD OF DIRECTORS

■ Ordinarily, the authority of a corporation's board of directors to make a particular corporate decision may be exercised by the directors only when meeting together as a body with proper notice to all. 2 W. Fletcher, Cyclopedia Corporations § 392 (Rev.Vol.1969). On the basis of this well-accepted proposition of corporate law, appellants challenge numerous transactions undertaken by the corporation which were consummated without formal approval of the board of directors acting as a body.[3]

**3.** Specifically, in their complaint, the appellants challenged the following series of transactions which were consummated by the corporation without formal approval of the board of directors: (1) the purchase of Eastern Idaho Dairy; (2) the borrowing of funds from First Security Bank of Idaho and Idaho First National Bank; (3) the purchase of a computer; (4) the entering into a contract with the employee's union; and (5) increases in corporate officers' salaries.

Appellants' argument overlooks the fact that the courts have frequently upheld informal action of a board of directors. *See generally*, 2 W. Fletcher, *supra*, §§ 392–395. For example, where a corporate decision is made informally by a majority of the directors, and the participating directors own a majority of the shares of stock in the corporation, the courts have been willing to hold that the action so taken is legal and binding on the corporation. *Phillips Petroleum Co. v. Rock Creek Mining Co.*, 449 F.2d 664 (9th Cir. 1971); *Mannon v. Pesula*, 59 Cal.App.2d 597, 139 P.2d 336 (1943). Moreover, the courts have consistently held that the directors of a close corporation may transact the corporation's business affairs informally, especially where informality has become customary. *Myhre v. Myhre*, 170 Mont. 410, 554 P.2d 276 (1976); *Remillong v. Schneider*, 185 N.W.2d 493 (N.D. 1971). Underlying these decisions is the view that the general rule against informal corporate action exists solely for the protection of the shareholders; if they do not want or need the protection, a waiver may be inferred from their acquiescence in or knowing silence to a corporate decision arrived at through an informal procedure. *See generally*, Note, "Corporations: When Informal Action by Corporate Directors Will Be Permitted to Bind the Corporation," 53 Boston Univ.L.Rev. 101 (1973).

■ In the instant case the record discloses that since incorporation the board of directors meetings have been used merely as a vehicle for the election of corporate officers and the hearing of management reports concerning corporate activities for the past year. The standard practice of Rowland's Inc. has been that a management team, consisting of the corporate officers, would discuss, review and determine the corporation's course of action in its conduct of major as well as routine business decisions and practices. While neither V. C. Rowland nor Tom Rowland were members of the management team during the period when the challenged transactions were entered into, the record discloses that the management team invited both appellants to attend and participate in the management team's meetings and decisions. The record further discloses that there has never been any attempt by appellants to alter or change this informal procedure of corporate decision-making utilized by Rowland's Inc. Under these circumstances, it was neither illegal nor improper for this close corporation's business affairs to be transacted without formal approval of the board of directors acting as a body.

## DENIAL OF ORDER OF DISSOLUTION FOR WANT OF SUFFICIENT EVIDENCE

■ The question of a court's power in the absence of specific statutory authority to dissolve a going, solvent corporation is one of first impression. The general rule is that in the absence of specific statutory authority, a court is without authority to order dissolution of going, solvent corporations in a suit brought by minority shareholders. 19 Am.Jur.2d, Corporations § 1602 (1965). The remedy of a disgruntled shareholder, dissatisfied with the management and operation of a corporation, normally is to withdraw from the corporation by the sale of his stock interest in the corporation. *Id.* at § 1601.

■ However, most courts today, pursuant to the principles of equity, will dissolve going, solvent corporations where there is *substantial evidence* of deadlock, dissension or oppression. *See, e. g., Galler v. Galler*, 32 Ill.2d 16, 203 N.E.2d 577 (1964); *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 507 P.2d 387 (1973). O'Neal, in his treatise, Close Corporations, § 9.27 (1971), observes that among the situations where the courts have afforded relief to minority shareholders by ordering dissolution and the winding up of a corporation, are the following:

"(1) The officers, directors, or majority shareholders have been guilty of fraud, have abused and oppressed minority shareholders, or have grossly mismanaged

the corporation; (2) a deadlock exists among the shareholders which has resulted in a stoppage of corporate activities or culminated in a usurpation of control by part of the shareholders to the exclusion of the others; (3) because of dissension or otherwise, it has become impossible for the corporation to attain the objectives it was formed or for the business to be carried on profitably."

Consonant with the foregoing statements relative to those situations where dissolution of a going, solvent corporation is warranted, the district court made several findings of fact in this matter to the effect that appellants failed to establish, even by a preponderance of evidence, any facts which would establish or show failure of corporate purpose, insolvency, gross or negligent mismanagement, fraud, or illegal transactions. On the basis of those findings, the district court concluded that appellants had failed to form a sufficient factual basis to warrant an order of dissolution of Rowland's Inc. Appellants contend that the district court erred in this regard. We disagree.

Although it is true that the amendment to Article VII, § 2 of the by-laws approved at annual meeting of the shareholders on April 5, 1972, effectively precludes the appellants in their capacity as members of the board of directors from vetoing the actions of the other board of directors when they act as a group, the record discloses no instance where the voting provision of the amended by-law has been utilized by the other members of the board to oppress the appellants. Our review of the record further discloses that the lack of appellants' participation in the affairs of the corporation is the result of their own voluntary actions rather than any of the actions allegedly undertaken by the other shareholders and board members. Moreover, the record indicates that although dissension exists among the shareholders, Rowland's Inc. is actively engaged in the dairy business, and is capable of and is carrying out its corporate purposes. The district court therefore did not err in concluding that there existed a failure of proof to form a basis for granting appellants' demand for an order of dissolution of Rowland's Inc.

## ENFORCEABILITY OF BUY–OUT ARRANGEMENT

■ Article IX of the by-laws sets up a procedure whereby any holder of stock in the corporation, if desirous of selling it, must offer the shares of stock to the corporation. Specifically, in the event there is no outside market for the sale of the stock, Article IX provides that the shareholder may require the corporation to purchase the stock at book value. In the event a market exists for the sale of stock to a third party, the shareholder must first offer the shares of stock for sale to the corporation upon terms equal to the offer from the third party and if the corporation declines to purchase the stock, then the shareholder is at liberty to sell the stock to the third party.[4] Article IX of the by-laws further provides that the book value of the stock is the certified book value of the stock as determined by the board of directors at their annual meeting. The minutes of the board of directors meeting of April 12, 1972 contains the following resolution, which was approved by the members of the board: "report of the book value of shares divided into net worth would equal $1.93 or $1.934 per share."

Appellants contend that Article IX of the by-laws should be declared unenforceable on the ground that it would be inequitable to require them to relinquish their stock interest according to its certified book value when that valuation allegedly does not reflect the true value of the corporation as an entity. We disagree.

The general rule as to the enforceability of particular restrictions on the alienability of stock such as the one here is set forth clearly in 18 Am.Jur.2d, Corporations § 384 (1965):

4. This later provision is not in issue in this case inasmuch as the record reflects that no outside market exists for the sale of the stock.

542

"The tendency of the courts is to sustain a restriction imposed by a corporation upon the alienability of stock, if reasonable and if the stock has been accepted following its adoption and with knowledge of its provisions, whether such restriction is valid as a by-law or not, on the ground that it constitutes a valid agreement between the stockholders and the corporation, especially if it goes no further than to give an option on the stock for a limited period. These principles are particularly applicable as against stockholders who assent to, or participate in, the adoption of the by-laws."

Illustrative of the above propositions is the case of *Ginter v. Palmer & Co.*, 39 Colo.App. 221, 566 P.2d 1358 (1977). That case involved a corporate article which provided that the corporation would have the initial option to purchase the stock of a deceased shareholder at book value on the date of death. The court upheld the restriction on alienation of the stock and determined that the definition of book value was unambiguous. 566 P.2d at 1360. In so holding, the court quoted approvingly the following statement from *Allen v. Biltmore Tissue Corp.*, 2 N.Y.2d 534, 161 N.Y.S.2d 418, 141 N.E.2d 812 (1957):

"The validity of the restriction on transfer does not rest on any abstract notion of increasing fairness of price. To be invalid, more than mere disparity between option price and current value of the stock must be shown .... Since the parties had in effect agreed to a price formula which suited them, and provision is made freeing the stock for outside sale, should not the corporation make, or provide for the purchase, the restriction is reasonable and valid." 566 P.2d at 1360–61.

*Accord, Sterling Loan & Investment Co. v. Litel*, 75 Colo. 34, 223 P. 753 (1924); *Doss v. Yingling*, 95 Ind.App. 494, 172 N.E. 801 (1930); *Krauss v. Kuechler*, 300 Mass. 346, 15 N.E.2d 207 (1938); *First Nat'l Bank of Canton v. Shanks*, 73 N.E.2d 93 (Ohio 1945).

At the time the by-laws were originally adopted, appellants assented to the inclusion in the by-laws of the provision empowering Rowland's Inc. to purchase the stock at book value from a shareholder where there exists no outside market for the sale of the stock. Additionally, the restriction is reasonable: it does not prevent the alienation of stock and serves the salutory purpose of giving those who own stock in the corporation the right to have control of the corporation maintained in the Rowland family. Thus viewed, Article IX of the by-laws is valid and binding upon the shareholders of the corporation.

Judgment affirmed. Costs to respondents.

BAKES, C. J., BISTLINE, DONALDSON and SHEPARD, JJ., concur.