Alan K. FORBES, an individual; Michael T. Murray, an individual; Renee Romain, as the Personal Representative of the Estate of Joseph E. Romain, an individual; and Doyle E. Young, an individual, suing derivatively as shareholders on behalf of Enervest Corporation, a Colorado corporation; and Alan K. Forbes, individually, Plaintiffs–Appellants,

v.

Randy S. GOLDENHERSH, George W. Holbrook, Jr., Bradley Resources Company, Hot Springs Power Company and Nevada Geothermal Power Partners, L.P., Defendants–Appellees.

No. 93CA1951.

Colorado Court of Appeals,
Div. V.

Nov. 17, 1994.

Rehearing Denied Dec. 15, 1994.

Certiorari Denied July 31, 1995.

Dixon & Snow, P.C., Jerre W. Dixon, Rod W. Snow, Steven Janiszewski, Denver, for plaintiffs-appellants.

Biermann & Fretz, P.C., Joseph H. Fretz, Dirk T. Biermann, Denver, for defendants-appellees.

Opinion by Judge TAUBMAN.

In this action challenging the validity of the transfer of a corporate asset, plaintiffs, Alan K. Forbes, Michael T. Murray, Renee Romain, as the personal representative of the estate of Joseph E. Romain, and Doyle E. Young, suing derivatively as shareholders on behalf of Enervest Corporation, and Alan K. Forbes, individually, appeal the trial court's judgment entered in favor of defendants, Randy S. Goldenhersh, George W. Holbrook, Jr., Bradley Resources Company, Hot Springs Power Company, and Nevada Geothermal Power Partners. We affirm.

This appeal involves one of five cases that were consolidated at trial. Enervest was organized as a Colorado corporation in 1987 to create, manage, buy, and sell energy and power generating projects. Holbrook and Goldenhersh (the Holbrook group) controlled a majority of the Enervest shares and held two of the six positions on the board of directors. Conversely, Forbes, Murray, Romain, and Young (the Forbes group) represented only a minority of the Enervest shares but held four of the six director positions. The Forbes group brought a shareholder's derivative suit against the Holbrook group to set aside the transfer of an opportunity, known as "the Munson opportunity," from Enervest to the Holbrook group and its assigns, or for damages for the alleged wrongful transfer.

Prior to trial, the court entered partial summary judgment for the Forbes group on its claim that the transfer was not validly authorized by the directors or the shareholders of Enervest. The trial court granted the

partial summary judgment motion because the transfer was not made in accordance with Enervest's by-laws and the Holbrook group had not provided any evidence that the informal approval of the transfer was consistent with the customs and practices of the corporation. On the first day of trial, the court denied a motion by the Holbrook group to reconsider the partial summary judgment entered against it for the same reasons. However, in its final judgment, the trial court reconsidered its partial summary judgment ruling because it concluded that the Holbrook group had provided sufficient evidence to demonstrate that the transfer, although not in compliance with the by-laws, was consistent with the customs and practices of the corporation. The Forbes group claims that it relied on the partial summary judgment ruling and, thus, was prejudiced because it did not know the court would hear evidence on the validity of the transfer.

The trial court upheld the transfer of the Munson opportunity on multiple, alternative bases: the transfer was validly authorized by informal corporate action; the transfer was fair to Enervest and its shareholders; there was no "corporate opportunity"; and the Forbes group's claims were barred by laches. Accordingly, if we agree with the trial court on any ground, we must affirm its decision.

Enervest had two major undertakings, one of which was the Munson opportunity. A company known as Munson Geothermal, Inc., owned contract and leasehold rights to develop geothermal resources in Nevada. Munson Geothermal went into bankruptcy and its development of geothermal resources was stayed pending approval from the bankruptcy court.

In May 1989, Enervest began exploring the possibility of acquiring the Munson opportunity. Enervest made a proposal to the bankruptcy court to obtain the rights to develop the Munson opportunity. In October 1989, the proposal was approved. By March 1990 Enervest was nearly insolvent. To acquire and develop the opportunity, it was critically important for Enervest to maintain a high level of credibility as an energy project developer. All the directors believed that, in order to develop the Munson oppor-

tunity, it would have to be conveyed out of Enervest and into another entity. All the directors also recognized that substantial new amounts of capital were needed to continue with development of the Munson opportunity and that Enervest had no capital for that purpose.

On March 20, 1990, a meeting of the Enervest directors and shareholders was held by conference call. Because of the locations of the various directors and shareholders it had been a regular policy and practice of Enervest from its inception to hold shareholders and/or directors meetings by conference telephone call. At the March 20 meeting, Holbrook suggested that Bradley Resources, an entity with which he was affiliated, should buy the Munson opportunity. He proposed that Bradley pay Enervest the amount of expenses it had put into developing the Munson opportunity plus a net profit interest. The other directors and shareholders asked Holbrook to put his proposal in writing so that they could consider it further. Since they could not resolve all the issues during that meeting, the directors and shareholders agreed to continue the meeting until March 30, 1990. The directors and shareholders met on that date, but failed to make a final decision.

At that meeting, Holbrook estimated that Enervest had spent $30,000 on the Munson opportunity to date. Therefore, Bradley proposed to purchase the right to develop it for $30,000 ($20,000 in cash and a promissory note for $10,000), plus 10 percent of the net profits. None of the directors or shareholders was prepared to vote on the proposal at that time. Consequently, Goldenhersh proposed that he call each director within the next few days to obtain his vote on the Bradley proposal. The directors and shareholders unanimously accepted this method of proceeding.

After the meeting, Goldenhersh contacted Murray, Romain, and Young by telephone to obtain their votes on the final proposal. Goldenhersh then drafted the minutes of the meeting to reflect the final vote in favor of transferring the Munson opportunity from Enervest to Bradley. The trial court found that Murray, Romain, Holbrook, and Golden-

hersh voted for the proposal, and that Young voted against it. Goldenhersh did not call Forbes or give him an opportunity to vote because Forbes had previously expressed his opposition to the Bradley proposal both verbally and in writing. Therefore, Goldenhersh recorded Forbes' vote as being against the proposal.

Bradley made payments in accordance with its obligation on the assumption that its proposal had been accepted. After acquiring the Munson opportunity from Enervest, Bradley conveyed it to Holbrook, who in turn conveyed it to the Hot Springs Power Company. The trial court found that, although the Forbes group was dissatisfied with the Bradley proposal, it made no objection to the transfer prior to commencing this litigation.

The trial court also found that, throughout its existence, Enervest had a practice of following corporate formalities at some times and ignoring them at others. The corporation, through its directors and shareholders, had approved these informal procedures, and no one had ever objected to this practice. Activities which were frequently performed informally included meetings by telephone conference, meetings without minutes or other records, making major decisions without minutes or written consents, and insufficient and inadequate meeting notice.

## I.

The Forbes group contends that the trial court, having entered partial summary judgment against the Holbrook group on the legality of the transfer of the Munson opportunity from Enervest, erred in considering the evidence on that issue during the trial and in reversing its partial summary judgment in its final judgment. Alternatively, it argues that it was prejudiced when the trial court did not give it notice that the legality of the transfer remained an issue for trial. We perceive no error in the trial court's treatment of the issue.

■ There is no Colorado case law directly on point. However, when the Colorado and Federal Rules of Civil Procedure are essentially identical, case law interpreting the federal rule is persuasive in analysis of the Colorado rule. *Harding Glass Co. v. Jones,* 640 P.2d 1123 (Colo.1982). That is the situation here regarding C.R.C.P. 56, and therefore, we rely on federal case law and authorities in our analysis.

■ By its terms, C.R.C.P. 56(d) involves an adjudication of less than the entire action, and consequently, a disposition pursuant to that rule does not purport to be a final judgment. 10A C. Wright, A. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2737 (1983). Instead, a trial court remains free to reconsider an earlier partial summary judgment ruling absent the entry of judgment under C.R.C.P. 54(b). *See In re Unioil, Inc.,* 962 F.2d 988 (10th Cir.1992); 15B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3914.28 (1992); 6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.26–1 (1993) (partial summary judgments are interlocutory in nature and, consequently, remain subject to being revised, modified, or vacated by the trial court). Thus, C.R.C.P. 54(b) provides that in the absence of a Rule 54(b) certification, any order, however designated, which adjudicates fewer than all the claims "is subject to revision at any time before entry of judgment adjudicating all the claims...."

■ Here, in its partial summary judgment, the trial court ruled that the informal vote was not in compliance with Enervest's bylaws or § 7–5–108(3), C.R.S. (1986 Repl. Vol. 3A). *Cf.* § 7–108–202, C.R.S. (1994 Cum.Supp.) which provides a substantially similar provision under the subsequently enacted Colorado Business Corporations Act. Thus, it determined that, because the Holbrook group had not presented any evidence to support its contention that Enervest had a history of making decisions by informal action, the informal vote to approve the transfer of the Munson opportunity was invalid. The court reached a similar conclusion when it denied the Holbrook group's motion at the beginning of trial to reconsider the partial summary judgment.

However, under the partial summary judgment order, the trial court had expressly reserved for trial the related issues of whether the transaction was fair to the corporation

and whether the transaction could be upheld through the application of laches or estoppel, finding that there were material factual disputes concerning these issues.

Thus, we hold that the court was authorized to reconsider its prior partial summary judgment ruling.

Further, the Forbes group has not shown that it was prejudiced by not being given formal notice that the validity of the transfer remained an issue for trial. The Forbes group did not object at trial to the court's receipt of evidence concerning the validity of the transfer of the Munson opportunity. Instead, during its case-in-chief, the Forbes group put on evidence regarding the informal telephone vote, which is the very matter that it now asserts should not have been at issue at trial. In addition, in its motion for new trial it did not indicate what other evidence it would have put on at trial or how it would have proceeded differently had the trial court given it notice that the court might reconsider its partial summary judgment order. Finally, the Forbes group did not file an affidavit in support of its motion for new trial as required by C.R.C.P. 59(d). Therefore, it cannot now complain that it was prejudiced. *See Minto v. Lambert,* 870 P.2d 572 (Colo. App.1993); C.R.C.P. 61. Accordingly, we perceive no procedural defect in the court's action.

## II.

The Forbes group also contends that the trial court erred in ruling that the transfer of the Munson opportunity was valid based on the customs and practices exception to the applicable statutes requiring a corporation to follow formal procedures contained in its articles of incorporation and by-laws. It further contends that since Enervest had only existed for 2 years and 4 months there was not sufficient time to develop a custom. We are not persuaded.

■ Generally, any law or by-law instructing the directors to act in a certain way should be followed. However, informal action by a majority of the directors of the corporation is valid, as a matter of law, when it is in accordance with the corporation's customs and practices. *Holy Cross Gold Mining & Milling Co. v. Goodwin,* 74 Colo. 532, 223 P. 58 (1924) (informal action by the board of directors is valid if it has become a practice of the directors to act that way). *See also Longmont Supply Ditch Co. v. Coffman,* 11 Colo. 551, 19 P. 508 (1888); 2 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 394 (1990).

■ Furthermore, action taken informally on behalf of a closely held corporation can be valid even though corporate formalities are not followed:

> The doctrine of permitting close corporations to act informally is recognized as an exception to the general rule that directors must act as a board and duly convene meetings. In fact it is well known that corporations which include only a few stockholders do not often act with as much formality as larger companies. This is especially so where the members of the board, actually and directly, personally conduct the business.

2 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 394.1 (1990). *See* 1 C. Krendl, *Closely Held Corporations in Colorado* § 5.45 (1981).

Courts in other jurisdictions have similarly held that informal action by directors or shareholders of a closely held corporation is valid. *See Rowland v. Rowland,* 102 Idaho 534, 633 P.2d 599 (1981) (a corporate decision made informally by a majority of the directors, who own a majority of the shares, is legal and binding upon the corporation); *Remillong v. Schneider,* 185 N.W.2d 493 (N.D.1971) (where directors, who were also shareholders, frequently acted informally, their actions were valid); *Phillips Petroleum Co. v. Rock Creek Mining Co.,* 449 F.2d 664 (9th Cir.1971) (informal action taken by officers and directors holding a majority of the shares was valid even though no formal shareholders meeting was called and the minority shareholders were not given an opportunity to express their opinion).

In addition, when evidence in the record supports the trial court's factual findings, those findings will not normally be disturbed on appeal, and any inferences or conclusions

drawn by the trial court from such evidence are entitled to similar deference. *Associates of San Lazaro v. San Lazaro Park Properties,* 864 P.2d 111 (Colo.1993).

Consistent with § 7–5–108(3), C.R.S. (1986 Repl.Vol. 3A), Enervest's by-laws provided that director or shareholder action could be taken without a meeting if a consent was signed by all persons entitled to vote at that meeting.

The trial court found that the telephone vote for approval of the transfer was not consistent with the corporation's by-laws because written consents to the informal telephone action were not obtained. However, it also found that the directors and shareholders had acted informally throughout the entire two years and four months existence of Enervest. *See American Center for Education, Inc. v. Cavnar,* 80 Cal.App.3d 476, 145 Cal.Rptr. 736 (1978) (informal action over a period of one year and four months was sufficient to establish a custom and practice). Indeed, the trial court found that Enervest regularly ignored those corporate formalities and utilized informal procedures which were approved by the directors and shareholders. Furthermore, no one ever objected to the informal procedures and, in fact, Enervest made major decisions without minutes or written consent. For example, the directors and shareholders acted informally during Enervest's most substantial undertaking prior to the Munson opportunity which involved $18–20 million.

Thus, the trial court found that the directors and shareholders of Enervest had developed a custom and practice of acting informally. Consequently, it concluded that their actions were binding upon the corporation insofar as any shareholder or director sought to set it aside.

The trial court's findings are supported by the record and are detailed in its comprehensive, well-reasoned 58–page decision. Therefore, we may not disturb the court's findings on this issue on appeal.

The Forbes group make several other related contentions; however, in light of our disposition of these issues, we do not address them.

Accordingly, the judgment is affirmed.

RULAND and BRIGGS, JJ., concur.