**William M. WHITE, Plaintiff–Appellee,**

**v.**

**THATCHER FINANCIAL GROUP, INC., a Colorado corporation, Defendant–Appellant.**

**No. 95CA0478.**

Colorado Court of Appeals, Div. I.

Oct. 24, 1996.

As Modified on Denial of Rehearing Dec. 19, 1996.

Rehearing Denied Dec. 19, 1996.

Certiorari Denied July 28, 1997.

 

Krendl Horowitz & Krendl, Jay S. Horowitz, Kim E. Ikeler; Gibson Dunn & Crutcher, Lawrence W. Treece, Denver, for Plaintiff–Appellee.

Ballard Spahr Andrews & Ingersoll, Roger P. Thomasch, Leslie A. Eaton, Denver, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, Thatcher Financial Group, Inc. (TFG), appeals the judgment entered on a jury verdict in favor of plaintiff, William M. White, on his claims for breach of contract. We affirm.

White inherited a controlling ownership interest in First National Bank of Salida in 1983. Some time in late 1987, Salida Bank was converted from a commercial bank to a federal savings bank and its assets were transferred to the new federal savings bank known as Thatcher Bank. White and the other shareholders exchanged their stock in Salida Bank for stock in TFG, which was the holding company created to hold ownership interest in Thatcher Bank.

Following the conversion, White became the controlling shareholder of TFG, and there were approximately ten minority shareholders. Prior to November 1987, TFG had four directors on its board. In November 1987, two of those directors resigned and a new director was appointed to the board in December 1987. That director then resigned in early 1988 and the vacancy remained unfilled. During the pertinent period here, White was chairman of the board of directors and TFG's chief executive officer.

In 1990, TFG's other director resigned and White appointed Kelsey Kennedy as the second director. At no time did White or the shareholders appoint a third director. During the next two years of TFG's existence, White was the chief executive officer of TFG but received no salary from TFG. In addition, in an attempt to develop business and raise money for TFG, White made cash advances to TFG that enabled it to transact business and develop certain projects.

In July 1992, Pitkin County Bank became the controlling shareholder of TFG. Shortly thereafter, White and Kennedy resigned as directors of TFG. White then filed this action against TFG to collect past salary unpaid from January 1991 through July 1992, and other amounts he had advanced to TFG in order for it to operate during the previous years.

The jury returned a verdict in favor of White for reimbursement for payments made in connection with costs and expenses for the preparation of a private placement memorandum, for past salary, and for the repayment of miscellaneous advances. In addition, the jury found in favor of White on TFG's counterclaim for breach of fiduciary duty. The jury found in favor of TFG on White's claim for reimbursement of payments made in connection with a real estate development project. This appeal followed.

### I.

■ TFG first contends that any agreement between it and White to reimburse White for costs and expenses advanced to TFG or for a salary is not valid and binding on TFG since, during the time in which the alleged agreements were reached, TFG had only two directors on its board and, therefore, was in violation of the law. We disagree.

At all relevant times hereto, Colo. Sess. Laws 1983, ch. 68, § 7–5–102 at 398 provided that the number of directors of a corporation shall not be fewer than three if there are three or more shareholders of the corporation. In addition, § 7–5–102, C.R.S. (1986 Repl.Vol. 3A) provided that, at each annual meeting of the shareholders, the shareholders shall elect directors to hold office until the next succeeding annual meeting. TFG argues that this statute was violated by the maintenance of a board of only two directors and that, therefore, any actions taken, or agreements entered into, by the board were invalid and not binding on the corporation.

Colo. Sess. Laws 1963, ch. 84, § 31–31–4 at 245 (currently found at § 7–5–104, C.R.S. (1989 Repl.Vol. 3A)), also applicable at the time in question, provided that any vacancy occurring in a board of directors may be filled by the affirmative vote of a majority of the remaining directors. TFG's bylaws also so provided.

In addition, prior to its repeal, Colo. Sess. Laws 1977, ch. 68, § 7–5–106 at 375 provided that a majority of the number of directors determined pursuant to § 7–5–102 shall constitute a quorum for the transaction of business. That section further provided that an act of the majority of the directors present at a meeting at which a quorum was present shall be the act of the board of directors. Again, TFG's bylaws were in accord with that statute.

It is under these now repealed, but applicable, statutes that we must determine whether, under the circumstances here, a board's actions are binding on a corporation when the board consists of fewer than three directors as required by § 7–5–102. We conclude that they are.

When TFG was first formed, the board of directors consisted of four people. Thereafter, two resigned and a third member was elected to the board. Thus, the board was properly constituted under the applicable statute.

Thereafter, one of the board members resigned and the vacancy remained unfilled. Approximately one year later another director of the board resigned and was replaced. However, the vacancy left by the third director's resignation still remained unfilled.

Although § 7–5–104 provided that a vacancy on the board of directors may be filled by the affirmative vote of a majority of the remaining directors, the section did not mandate when such vacancy must be filled. In addition, § 7–5–106 clearly provided that a majority of directors shall constitute a quorum for the transaction of business by a corporation and that the act of a majority of the directors present at a meeting in which the quorum was present shall be the act of the board of directors.

Here, when the TFG board of directors approved any alleged agreements to reimburse White for costs and expenses in connection with the private placement memoran-

dum, miscellaneous expenses, and to pay him a salary, such approval, if taken by a majority of a quorum of directors in attendance, was binding on the corporation. Further, at all relevant times in which the alleged agreements between TFG and White occurred, it is undisputed that two of the three directors required by § 7–5–102 were present at all board meetings and both voted in favor of all actions taken by the board.

Since the General Assembly in § 7–5–102 did not specifically provide that any actions taken by a board of directors with fewer than three directors on the board shall be invalid and not binding on a corporation, and other applicable statutes suggest otherwise, we refuse to place such a burdensome interpretation on that section.

Specifically, § 7–5–106 provides that, when a quorum of the board of directors is present at a meeting, the act of a majority of directors shall be the act of the board. *See Peoples Bank v. Banking Board,* 164 Colo. 564, 436 P.2d 681 (1968)(where only 5 of 7 bank board members were available, and vote was 3 to 2 to approve charter, court interpreted similar language found in the banking code as meaning that a quorum of the banking board in attendance could act for the board); *Gumaer v. Cripple Creek Tunnel, Transportation & Mining Co.,* 40 Colo. 1, 90 P. 81 (1907)(if a quorum of the board of directors is present, a majority of the quorum can legally do any act that the entire board is authorized to do). *See also O'Gorman v. Industrial Claim Appeals Office,* 826 P.2d 390 (Colo.App.1991)(increase in number of panel members did not change procedure whereby 2 panel members who agree can resolve cases); *Jacobson v. Moskowitz,* 27 N.Y.2d 67, 313 N.Y.S.2d 684, 261 N.E.2d 613 (1970)(where quorum of board is 75% of directors but resignations made 75% attendance impossible for several years, vitality of the corporation was to be preserved and paralysis of its functions and its dissolution were to be avoided by the practical procedure of allowing a majority of directors in office to act for corporation and to fill vacancies on board); *Bahar v. Schwartzreich,* 204 A.D.2d 441, 611 N.Y.S.2d 619 (1994).

We recognize that, generally, if a corporation has fewer directors than the minimum required by statute, the issue arises whether the directors may act as a board. However, there are exceptions to the general rule that they may not act. These exceptions may include internal affairs of the corporation which must be carried on from necessity, and matters in which third parties reasonably believe a duly constituted board has acted on the corporation's behalf. 2 W. Fletcher, *Cyclopedia of Law of Private Corporations* § 421 (1990); *Jacobson v. Moskowitz, supra; Twisp Mining & Smelting Co. v. Chelan Mining Co.,* 16 Wash.2d 264, 133 P.2d 300 (1943); *Wright v. Commonwealth,* 109 Pa. 560, 1 A. 794 (1885)(the power of a board of directors is not suspended by vacancies in board unless the number be reduced below a quorum).

■ And, while statutes and corporate bylaws instruct directors to conduct their corporation's business in certain ways, informal action on the part of the directors is valid, as a matter of law, "when it is in accordance with the corporation's customs and practices." *Forbes v. Goldenhersh,* 899 P.2d 246, 250 (Colo.App.1994).

We find further support for our conclusion in the cases and comments concerning the modern practice of closely held corporations.

As to closely held corporations, in particular, action taken informally can be valid even though corporate formalities are not followed. Thus, corporations with few shareholders, and in which directors personally and directly conduct the business, act with little formality. *Forbes v. Goldenhersh, supra; Holy Cross Gold Mining & Milling Co. v. Goodwin,* 74 Colo. 532, 223 P. 58 (1924); 2 W. Fletcher, *supra,* §§ 394 & 394.1. *See* 1 C. Krendl, *Closely Held Corporations In Colorado* § 5.45 (1981).

Furthermore, allowing a corporation to escape liability for actions or agreements by its board that involve third parties would place an excessive burden on parties dealing with a corporation to ensure that the corporation's board was properly constituted pursuant to § 7–5–102. To allow a corporation to avoid such obligations, based upon the technical requirement provided for in § 7–5–102,

would slow the corporate business world significantly. While we recognize that White was not a third party who was unaware of TFG's technical non-compliance with § 7–5–102, the jury's finding that White had not breached his fiduciary duties to the corporation also supports the conclusion that TFG should not be able to avoid liability for the actions of a quorum of its board.

Here, the record reflects that TFG had approximately ten minority shareholders and a small board of directors, members of which actually, directly, and personally conducted the business of the corporation. Clearly, the custom and practice of the corporation was to operate with fewer than the required number of directors, but still with a quorum of the board, and the jury here apparently so found.

Therefore, we conclude that any actions taken by TFG's board of directors when it consisted of only two directors were binding on TFG.

## II.

██ TFG next contends that the judgment based on the jury verdicts should be overturned and that the trial court erred in failing to direct verdicts in its favor because White failed to prove the existence of any agreements between himself and TFG to support his claims that TFG owed him various amounts. We disagree.

██ A directed verdict is properly granted if the evidence, considered in a light most favorable to the non-moving party, compels the conclusion that reasonable persons could not reach a verdict adverse to the movant. *Morgan v. Board of Water Works,* 837 P.2d 300 (Colo.App.1992). Conversely, if there is competent evidence in the record to support the jury verdict, it will not be disturbed on appeal. *Brewer v. American & Foreign Insurance Co.,* 837 P.2d 236 (Colo. App.1992).

Here, both acting directors of TFG testified that, during the summer and early fall of 1990, they discussed and agreed on an appropriate salary for White as chief executive officer of TFG. Furthermore, both directors testified that, at a more formal meeting of the board the following year, they memorial-ized this agreement in the minutes of a board meeting. These minutes were also introduced as an exhibit at trial.

In addition, both directors testified that, in its efforts to raise capital and issue a private placement memorandum, the board agreed to reimburse White for all advances made to TFG. The minutes of a board of directors meeting also reflect that the board confirmed that all advances should also bear 10% interest from the last date of the quarter in which any advance was made.

While the evidence is less abundant as to the board of directors' approval to repay White for the costs of the private placement memorandum and for miscellaneous expenses, inferences from the evidence do support the jury's finding and TFG presented no evidence or testimony to the contrary.

When such findings are supported by the record, they will not be disturbed on appeal. *See Forbes v. Goldenhersh, supra.* Therefore, we conclude that the evidence, and all permissible inferences drawn therefrom, is sufficient to support the jury's verdict.

Accordingly, the judgment of the trial court is affirmed.

METZGER and CRISWELL, JJ., concur.