DECISION
This matter was heard by the Court, sitting without a jury, on September 16, 1998. Josephine Artesani (plaintiff) filed the instant action against the Glenwood Park Condominium Association (Association) and Louis Croce (Croce), both individually and in his capacity as Manager of the Association. The basis of Artesani's complaint is the alleged mismanagement of Association Board meetings and finances. Artesani requests punitive damages in an amount established by this Court, attorney's fees in the amount of $2,000.00, reimbursement for out-of-pocket expenses, her fair share of the profits as established by financial statements, interest and costs. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 Facts/Travel
In the mid-1970's, the defendant Croce purchased about forty-four Glenwood Park condominium units at a foreclosure sale. In 1986, Artesani inherited ownership of unit number 55.
At present, Croce owns 58 of the 60 Association units. Although never officially elected, Croce holds office as President and Manager within the Association. In that capacity, Croce notified unit owners that the Board of Directors raised assessment fees a total of $30.00 to $160.00 per month over the course of a few years. Artesani was neither notified when the meetings were to take place nor given an explanation for the Boards actions. Furthermore, there is no officially-elected "Board of Directors." Thus, Artesani questioned the validity of the increase and refused to pay the difference until she received an explanation. The defendants responded to her refusal with a notice of late fees and overdue assessment charges. Artesani's continued delinquency prompted the defendants to commence foreclosure proceedings against the unit.
Artesani unsuccessfully moved to temporarily restrain the foreclosure proceedings. Accordingly, in order to prevent further legal action against the unit, the plaintiff paid all assessment and late charges, attorney's fees, advertisement fees, and other appropriate sums.
Artesani filed the instant action against the defendants. In a non-jury trial, "the trial justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences."Id. The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks, 667 A.2d 1250, 1251 (R.I. 1995) (citingWalton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . ." Id. See also Rodrigues v. Santos,466 A.2d 306, 312 (R.I. 1983) (the question of who is to be believed is one for the trier of fact).
 Increased Assessment
The plaintiff first complains of the increased assessment fees. She argues that the increase in fees is unauthorized and uncollectable because it arose pursuant to an unnoticed Board of Directors meeting. She reasons that the increase, decided upon in a meeting which did not follow the formalities proscribed in the Condominium Declaration, is invalid. As she has been paying the increase in order to avoid foreclosure, she asks the court for reimbursement of these funds plus costs, totaling approximately $3,200.00. The defendant rebuts plaintiff's claim by arguing that condominium/statutory law does not state that an increase in expenditures is illegal and/or void if Board meetings are not properly conducted.
Under the Condominium Ownership Act[1], it is the "duty of each unit owner to pay his or her proportionate share of the common expenses. Payment shall be in amounts and at such times as determined by the management committee in accordance with the terms of the declaration or the bylaws." G.L. (1956) §34-36-20. Under the Glenwood Condominium Association Declaration, "if it shall appear to the Manager that the charges, assessments, and other revenue, if any, of the condominium is insufficient to pay the same and to adequately fund reserves, the Manager shall so notify the Owner in detail of that fact and request the Owner to increase the monthly assessments and charges. Failure on the part of the owner to do so within a reasonable time in accordance with the By-Laws may, at the option of the Manager, be construed as a breach of this Agreement by the Owner." Declaration at 98. Moreover, the Declaration and General Laws are in accord with general condominium law. See 2 Gary A. Poliakoff, The Law ofCondominium Operations, § 5:04 (1988) ("the Board of Directors is vested with considerable discretion in exerting managerial and administrative responsibilities, including the privilege to determine the necessary expenses for the development and operation of the condominium project and to assess the owners their pro rata share for such `common expenses.'")
The plaintiff does not dispute this authority of the Board; rather, she questions the validity of an increase in assessments when the Board meetings do not follow proper formalities. The plaintiff complains that there is no Board of Directors, that Croce never notified unit owners of the meetings, that Croce never prepared a budget from which to calculate assessment fees and that Croce never provided her with an explanation for the increase. The plaintiff argues that this practice is in direct contravention to the Declaration, which provides for election of the Board, notice of members' meetings, and preparation of a budget. Declaration at 48-52. It follows, the plaintiff reasons, that an increase in fees, decided upon in defective meetings, is illegal and therefore uncollectable. In essence, the plaintiff's argument rests on the assumption that actions taken at the deficient "board meetings" are illegal.
While it is true that "an assessment must be lawfully imposed in order to be legally collected," Wayne S. Hyatt Philip S. Downer, Condominium and Homeowner Association Litigation § 6.6 (1987), an assessment increase decided upon in a defective meeting is not necessarily unlawfully imposed. Indeed, "directors' meetings irregularly convened or conducted may be cured by acquiescence or subsequent ratification." WimbledonTownhouse Condo. v. Wolfson, 510 So.2d 1106, 1108 (Fla. App. 4 Dist. 1987) (citing Redstone v. Redstone Lumber Supply Co.,101 Fla. 226, 133 So. 882 (1931)). Moreover, "the doctrine of permitting close corporations to act informally is recognized as an exception to the general rule that directors must act as a board and duly convene meetings." 2 W. Fletcher, Cyclopedia ofthe Law of Private Corporations § 394.1 (1990). Courts in other jurisdictions have held that a corporate decision made informally by a majority of the directors, who own a majority of the shares, is legal and binding upon the corporation. Rowland v.Rowland, 102 Idaho 534, 633 P.2d 599 (1981). See also Forbes v.Goldenhersh, 899 P.2d 246, 250 (Colo. App. 1994) (citing PhillipsPetroleum Co. v. Rock Creek Mining Co., 449 F.2d 664 (9th Cir. 1971) (informal action taken by officers and directors holding a majority of the shares was valid even though no formal shareholder's meeting was called and the minority shareholder's were not given an opportunity to express their opinion).
The Association, as is true of many closely held corporations, never held formal Board of Directors meetings. On the other hand, Croce, as owner of 58 of the 60 units, notified Artesani of upcoming assessment increases. Although Croce did not follow the corporate formalities, as the majority shareholder in a closely held corporation, his actions were nonetheless valid and binding on the Association. Furthermore, from 1986 to 1991, the plaintiff paid the assessments and never questioned the procedure used in arriving at them.
 Profits
Artesani also argues that she is entitled to share in the profits generated by the Association. For support, she cites G.L. (1956) § 34-36-24, which provides:
 "Unless otherwise provided in the declaration or lawful amendments thereto, the common profits of the property shall be distributed among, and the common expenses shall be charged to, the unit owners according to the percentage of their undivided interest in the common areas and facilities."
Under the plain and ordinary meaning of the statute, then, she would be entitled to share in the profits in the absence of governing language in the Declaration. However, a close examination of the Declaration reveals language which defeats her right to share in the profits under the General Laws. Specifically, the Declaration provides:
 "All charges, assessments and other revenues, if any, of the condominium which the Manager shall collect shall be applied as follows: Insurance . . . Utilities . . . Manager . . . Balance . . The balance shall be utilized, applied, disbursed and otherwise expended or reserved by the Manager to pay the costs and expenses of the services rendered by the Manager under this agreement." Declaration at 99 (emphases added).
By including this language in the Declaration, a declarationwhich the plaintiff agreed to abide by as a unit owner, the Association granted broad discretionary power to the Manager to apply, disburse or otherwise expend or reserve the balance of the funds after general expenses. A review of the financial statements provided by the defendant show that he did just that. In 1991, he transferred a $29,164.42 net profit into the capital reserve fund. He did the same with the net profits in 1992, 1993, 1994, 1995 and 1996. The financial statements reveal that the Association produced a $24,839.58 net profit in 1990; whereas, the Association suffered a $28,539.09 net loss in 1997. Thus, the defendants have accounted for any "net profits" in which the plaintiff wishes to share. Accordingly, she is not entitled to share in profits which do not exist.
 Punitive Damages
The plaintiff further argues that she is entitled to recover punitive damages for Croce's actions. According to Artesani, Croce completely disregarded the law and the Declaration, Croce counters that there is no provision in condominium statutory law which provides for punitive damages.
Contrary to defendants assertion, the Condominium Ownership Act allows this Court, in its discretion, to award punitive damages plus fees and costs. G.L. (1956) § 34-36-34.2. Seegenerally, Shortle v. Central Vermont Public Service Co.,399 A.2d 517, 137 Vt. 32 (a defendant corporation may be liable for punitive damages in the appropriate case). In order to successfully claim punitive damages in Rhode Island, a plaintiff must provide evidence that the defendant acted so willfully, maliciously, or recklessly as to amount to conduct bordering on criminality. Palmisano v. Toth, 624 A.2d 314, 320 (R.I. 1993). The standard for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendants conduct requires deterrence and punishment over and above that provided in an award of compensatory damages. Davet v. Maccarone,973 F.2d 22, 27 (1st Cir. 1992). "Similarly, the United States District Court for the District of Rhode Island has stated that under Rhode Island law one must allege that the other party acted with the intent to cause harm." Palmisano, 624 A.2d at 318 (citingWilson Auto Enterprises, Inc. v. Mobil Oil Corp., 778 F. Supp. 101, 107 (D.R.I. 1991)).
Upon considering the evidence provided by the plaintiff, this Court finds that the actions of Croce do not rise to the level of maliciousness, willfulness, or recklessness required in order to recover punitive damages. See Conti v. Winters, Inc.,136 A.2d 622, 624 (R.I. 1957) (corporation assessed punitive damages for the fraudulent conduct of its management where a salesman falsely represented that a car had been driven 4,500 miles, 10,000 less than the actual mileage); See also, Musto v. Vidas,658 A.2d 1305, 1313 (N.J. Super.A.D. 1995) (majority shareholders' denial of employment and compensation to minority shareholder is not so egregious as to warrant punitive damages). As majority shareholder in a closely held corporation, Croce managed the Associations finances and arrived at an assessment increase to cover its rising costs. This Court finds that he applied the assessment funds to Association expenses in good faith. SeeNational Credit Union Admin. Bd. v. Regine, 749 F. Supp. 401
(D.R.I. 1990) (corporate director owes duty of utmost good faith and is required to place interests of corporation before personal interests).
After hearing and reviewing all the evidence before it, this Court denies the plaintiff's prayers for relief
Counsel shall submit the appropriate judgment for entry.
[1] This Court finds that Title 34, Chapter 36 of the General Laws will apply to the instant action as the 1974 Declaration provides that "this Glenwood Park Condominium Apartments Plan delineates the Condominium Project, defines the property rights on condominium and sets forth contractual arrangements governing such rights and the person or persons hereafter acquiring those rights, without, however, meaning or intending to limit, eliminate, alter or amend any rights or obligations provided for in Chapter 36 of Title 34, General Laws of Rhode Island, 1956, as amended." Declaration at 16.